James J. Rodgers, Esquire
John B. Consevage, Esquire
**DILWORTH PAXSON LLP**
Penn National Insurance Plaza
2 North 2nd Street, Suite 1101
Harrisburg, Pa 17101
(717) 236-4812
*Attorneys for Plaintiff Middletown Borough*

Jan L. Budman II, Esquire
**BUCHANAN INGERSOLL & ROONEY PC**
409 North 2nd Street, Suite 500
Harrisburg, PA 17101
(717) 237-4889

Jacob S. Pultman, Esquire (Special Admission Granted)
Bradley S. Pensyl, Esquire (Special Admission Granted)
**ALLEN & OVERY LLP**
1221 Avenue of the Americas
New York, NY 10020
(212) 610-6300
*Attorneys for Defendant Middletown Water Joint Venture LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MIDDLETOWN BOROUGH,<br><br>Plaintiff,<br><br>v.<br><br>MIDDLETOWN WATER JOINT VENTURE LLC,<br><br>Defendant. | NO: 18-cv-861-CCC<br><br>Chief Judge Christopher C. Conner |

**JOINT CASE MANAGEMENT PLAN**

1. Principal Issues

1.1 By Plaintiff:

Plaintiff contends that it is entitled to reformation of the Lease Agreement to the extent that the provisions relating to the Water Sales Shortfall and Shortfall Recovery do not accomplish what was either the shared goal of the parties, or the goal at least espoused by the defendant, of providing "downside protection" to the defendant in the event of an unanticipated drop in water sales. To the contrary, these provisions, as modified at the defendant's request, effected an immediate windfall to the defendant, which was not realized by the plaintiff, and defendant knew this. Plaintiff contends that a proper reformation will modify the Water Sales Shortfall provision to compare average retail sales during the specified test periods with 2013 retail sales, and the recovery amount should include water sales revenues only.

By Defendant:

Plaintiff's reformation claim is without basis in fact or law, and this Action is an ill-conceived attempt by Plaintiff to rewrite the unambiguous terms of the parties' agreement entered nearly four years ago. There was no mistake of existing fact by Plaintiff or Defendant at the time the Agreement was entered, as required both for a claim of mutual mistake and for a claim of unilateral mistake. Moreover, neither party ever had any intention of adopting Plaintiff's proposed revisions to the Agreement. There was no fraud or bad faith on the part of Defendant, or any knowledge by Defendant of any supposed mistake by Plaintiff. While Defendant was under no duty to do so in this arm's length contractual negotiation between counseled parties, Defendant actually made a request to Plaintiff's lawyers at the time of the revisions of the contract that said lawyers explain the Water Sale Shortfall provisions to Plaintiff. Specifically, when Defendant requested the changes to the provisions of the Agreement relating to the Water Sale Shortfall, Defendant's representatives wrote to Plaintiff's lawyers, "we ask that you explain the issue to your client." Since the very first month of the Agreement, January 2015, Defendant has provided Plaintiff with monthly reports and regular verbal updates reflecting that the Water Sale Shortfall amounts were always intended by the parties to be calculated in accordance with the terms of the Agreement. Nonetheless, Plaintiff never raised any argument that any such provisions did not reflect the parties' intentions or raised any issues with the methodology of the calculation until April 2018.

The Court has already denied Plaintiff's Motion for a Preliminary Injunction, ruling that Plaintiff failed to demonstrate a likelihood of success on the merits of its reformation claim. As made clear during the briefing and argument of the preliminary injunction, Plaintiff will not prevail on its claim and it has no witnesses who are able to testify to the parties' intentions or support Plaintiff's claim for reformation.

Plaintiff's assertion that the provisions somehow produce a "windfall" to Defendant is also without merit. To the contrary, Defendant provided Plaintiff with a $43 million upfront payment and agreed to provide Plaintiff with $45 million of annual payments based on the terms of the Agreement. Defendant's upfront payment enabled Plaintiff to resolve its budget deficit and enabled Plaintiff to avoid substantial increases in property taxes and/or electric rates to Borough residents. Defendant was the only party to place a bid on the Agreement, and Defendant would not have agreed to provide these

payments to Plaintiff without the provisions in the Agreement for Water Sales Shortfalls recovery.

1.2 The Facts The Parties Dispute Are As Follows:

Plaintiff contends that defendant intentionally induced plaintiff to accept defendant's proposed modifications to the Water Sales Shortfall and Shortfall Recovery provisions based on the representation that defendant was seeking downside protection, and its failure to correct the plaintiff's clearly expressed understanding that rates would be frozen until 2019 absent certain contingencies, while knowing that the referenced provisions would inevitably produce a rate increase starting in 2018.

Defendant contends that the Plaintiff was fully aware of the changes proposed by Defendant and aware of the risk of a Water Sales Shortfall and subsequent charges for a Shortfall Recovery. Plaintiff was represented by highly experienced legal and financial advisors throughout the bidding process and contractual negotiation period, and those lawyers distributed a memorandum during the contract negotiation process reflecting that they understood the provisions relating to the Water Sales Shortfall and Shortfall Recovery. The terms of the Agreement are unambiguous, and Plaintiff specifically represented in the Agreement that Plaintiff has "substantial business experience," that Plaintiff was "fully acquainted" with all of the terms of the Agreement, and that "the provisions and language of this Agreement have been fully negotiated." Moreover, the Agreement plainly provides six exceptions to the rate freezes cited by the Borough, including a specific provision clearly providing Defendant with the right to implement service charges to recover Water Sales Shortfalls without any need for Plaintiff's permission prior to 2019. Defendant did not mislead Plaintiff and Defendant expressly requested that Plaintiff's legal counsel explain the changes to their client.

The parties agree upon facts, as follows:

After several months of negotiations the parties entered into the Municipal Water and Wastewater Utility System Concession and Lease Agreement dated as of September 30, 2014.

Defendant has imposed an 11.25% surcharge on all retail water and sewer bills for the stated purpose of recovering shortfall amounts.

Prior to entering the Agreement, Plaintiff was facing a budget deficit and millions of dollars of unfunded pensions and other liabilities. Plaintiff decided at that time that, to resolve those issues, Plaintiff either had to raise property taxes and electric rates, or enter the Agreement. Defendant provided Plaintiff with the $43 million upfront payment sought by Plaintiff, and Defendant was the only party to bid on the Agreement. Defendant has made all of the annual payments it agreed to provide Plaintiff. Since the first month of the Concession, January 2015, Defendant has provided Plaintiff with monthly written reports reflecting Defendant's calculation of the Water Sale Shortfall amounts.

1.3 The Legal Issues The Parties <u>Dispute</u> Are As Follows:

Plaintiff believes it is entitled to reformation of the Agreement on the basis that it was induced to enter into the Agreement, containing as it does the modified WSS provisions, under a mistaken understanding of the economic consequences of those modified provisions.

Defendant believes that there is no basis for reforming the Agreement under either a mutual mistake or unilateral mistake theory. Plaintiff's theory that it failed to understand the economic implications of the provisions, even if accurate, does not support a claim for reformation.

Legal issues the parties agree upon are as follows:

The parties agree that Plaintiff has the burden of establishing the requirements for mutual mistake or unilateral mistake by clear and convincing evidence.

1.4 Identify Any Unresolved Issues As To Service Of Process, Personal Jurisdiction, Subject Matter Jurisdiction, Or Venue:

None.

1.5 Identify Any Named Parties That Have Not Yet Been Served:

None.

1.6 Identify Any Additional Parties That:

Plaintiff intends to join: None.

Defendant intends to join: None

1.7 Identify Any Additional Claims That:

Plaintiff intends to add: None.

Defendant intends to add: None

2. Disclosures

The parties expect to complete initial disclosures within seven days after the Court issues a decision on Defendant's Motion to Dismiss (in the event the motion is denied).

3. Early Motions

Plaintiff's Motion for a Preliminary Injunction was denied by the Court. Defendant's Motion to Dismiss the Amended Complaint is pending, and will be fully briefed on August 29, 2018 after Defendant files its reply.

4. Discovery

Formal discovery has not yet commenced. In addition to the exchange of documents in connection with initial disclosures, the parties expect to commence additional document discovery and deposition discovery shortly after the disclosures are complete.

The parties agree that the following witnesses should be deposed:

Individuals directly involved in the negotiation of the form of Agreement and who were responsible for the ultimate decision to execute the Agreement, including representatives from McNees Wallace & Nurick and United Water/SUEZ, Water Capital Partners, Ben Kapenstein, as well as other representatives, Council members and employees of the Borough of Middletown and Middletown Borough Authority who had involvement in negotiating and approving the Agreement and in receiving updates from Defendant regarding the Water Sales Shortfall calculation.

The parties agree that the numerical limitations prescribed in the Federal Rules of Civil Procedure for discovery tools, should apply, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by Plaintiff and by Defendant).

Discovery of Electronically Stored Information

The parties have not fully conferred with respect to electronic discovery, but they expect to do so within the time allowed for the exchange of initial disclosures; based upon their experience to date with discovery in the parallel arbitration proceedings, they do not anticipate any issues. However, one issue that may arise is the availability of documents from Plaintiff as there have been published reports regarding document destruction by the Borough of Middletown and/or the Middletown Borough Authority.

5. Protective Order

The parties will address the need for a protective order after the ruling on Defendant's Motion to Dismiss.

6. Scheduling

The parties propose to address the timing of completion of discovery, dispositive motions and trial promptly after the disposition of the pending motion to dismiss.

7. Certification of Settlement Authority

For Plaintiff, settlement authority rests with the Borough Council.

For Defendant, settlement authority rests with Argo Infrastructure Partners.

8. ADR – Pursuant to the terms of the Agreement, the parties pursued mediation without success.

9. The parties do not consent to jurisdiction by a magistrate judge

10. The parties do not have any other suggestions at this time for the case management process.

11. Lead counsel for the parties appear below. All are registered ECF users.

/s/Bradley S. Pensyl, Esquire
Bradley S. Pensyl, Esquire
Jacob S. Pultman, Esquire
Allen & Overy LLP
1221 Avenue of the Americas
New York, NY 10020
Bradley.pensyl@allenovery.com
Jacob.pultman@allenovery.com

Dated: August 23, 2018

/s/James J. Rodgers, Esquire
James J. Rodgers, Esquire
John B. Consevage, Esquire
Dilworth Paxson LLP
Penn National Insurance Plaza
2 North 2nd Street, Suite 1101
Harrisburg, PA 17101
jrodgers@dilworthlaw.com
jconsevage@dilworthlaw.com

Dated: August 23, 2018